# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TERRI HARRIS, as sister, next of kin and Survivor of RYAN HERRON, Deceased** ) ) ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-05-183-SPS |
| ) | |
| **MIKE MULLIN; BOBBY BOONE; SCOTT D. CROW; SGT. CHAD MORGAN; LT. JAMES WHALA; CPL. MATTHEW BROWN; and, ROBERT BERRY,** ) ) ) ) ) ) | |
| **Defendants.** ) | |

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this civil rights action, the Plaintiff Terri Harris sued the State of Oklahoma and officers of its Department of Corrections as the next of kin to brother Ryan Herron, who was murdered while incarcerated at the Oklahoma State Penitentiary ("OSP") in McAlester, Oklahoma. The Court dismissed all of the Plaintiff's clams against the State of Oklahoma (including those asserted against individuals in their official capacities), as well as ceratin individual claims. *See* Docket No. 27. The following claims survived: (i) a claim against the Defendants Chad Morgan, James Whala, Matthew Brown and Robert Berry under 42 U.S.C. § 1983 for depriving Herron of his civil rights by failing to take reasonable steps to insure his safety; (ii) a claim against Morgan, Whala, Brown and Berry under 42 U.S.C. § 1985 for conspiring to deprive Herron of his civil rights by failing to take reasonable steps to insure his safety; (iii) a claim against the Defendants Bobby Boone and Mike Mullin under

42 U.S.C. § 1983 for depriving Herron of his civil rights by failing to adequately train, supervise, and discipline corrections officers to take reasonable steps to insure prisoner safety; (iv) a claim against Boone and Mullin under 42 U.S.C. § 1985 for conspiring to deprive Herron of his civil rights by failing to adequately train, supervise, and discipline corrections officers to take reasonable steps to insure prisoner safety; and, (v) a claim against Mullin, Boone and the Defendant Scott D. Crow under 42 U.S.C. § 1985 for conspiring to deprive Herron of his civil rights by impeding the investigation into his death. The Defendants sought summary judgment on all these remaining claims, which the Court now grants for the reasons set forth herein.[1]

## A. BACKGROUND

Ryan Herron was housed at OSP in C-Unit, 2 Quad. On December 11, 2002, Herron and other inmates were released to the exercise yard between 9:15 and 9:45 a.m. At approximately 10:20 a.m., several inmates attacked Herron with homemade knives that were apparently concealed in body cavities.

After the fight started, Matthew Brown, who was manning the C-Unit control room, radioed to the other officers the news of the fight. Whala, Morgan, Hance, and Kerns made

---

[1] This case was originally assigned to United States District Judge Ronald A. White. On December 5, 2005, the parties agreed at a settlement conference to conduct a binding summary jury trial before the undersigned United States Magistrate Judge, and the case was referred for that purpose pursuant to 28 U.S.C. § 636(b)(3). The settlement agreement fell through when a dispute arose over whether the Plaintiff could appeal the outcome of the summary jury trial. The parties then consented to final disposition by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1) ("Upon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case[.]").

their way to the 2 Quad exercise yard. Once in the exercise yard, these officers ordered the inmates to stop fighting and get against the walls. The inmates complied. Approximately one minute and twenty seconds had expired from the time the fight started until the officers arrived. The inmates complied with the orders from the officers and medical care was summoned for the injured inmates. Despite the medical attention by the DOC staff, and paramedics from McAlester, Oklahoma, Mr. Herron died at the scene.

Following the incidents discussed above, an investigation of the altercation was ordered. Investigator Kenneth Yott was assigned to the investigation. Mr. Yott arrived at the scene on the morning of December 11, 2002, and immediately started his investigation. Following the conclusion of his investigation, Mr. Yott delivered his report to the Pittsburg County District Attorney's office.

### B. STANDARDS APPLICABLE TO SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party[,]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), with the evidence taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The burden is initially upon the movant to show the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party satisfies this burden, the burden thereafter shifts to the Plaintiff, who as the nonmoving

party, must go beyond the pleadings and "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof." *Applied Genetics v. First Affiliated Securities*, 912 F.2d 1238, 1241 (10th Cir. 1990). This Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The Defendants provide a detailed statement of the material facts they contend are not in dispute as required by Fed. R. Civ. P. 56. *See* Defendants' Motion for Summary Judgment and Brief in Support [Docket No. 69], Statement of Uncontroverted Facts, pp. 1-9. The Plaintiff also provides such a statement, but her response brief *does not contain* the statement required by Local Rule 56.1, *i. e.*, a statement of material facts which the Plaintiff contends *are* in dispute with supporting evidentiary citations. *See* EDOK LR CIV 56.1 ("The response brief . . . shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the numbered paragraphs of the movant's facts that are disputed."). Instead, the Plaintiff simply: (i) repeats the Defendants' material facts with which the Plaintiff agrees; and, (ii) omits the Defendants' material facts with which the Plaintiff apparently disagrees. Because the Plaintiff was required here to "set forth specific facts showing that there is a genuine issue for trial" and not allowed to "rest upon the mere allegations or denials of [her] pleading," Fed. R. Civ. P. 56(e), the material facts as set forth by the Defendants, including those the Plaintiff purports to dispute, are deemed admitted for

purposes of summary judgment. *See* EDOK LR 56.1 ("All material facts set forth in the statement of the material facts of the movant shall be deemed admitted for purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party."). The Court will cite such facts as are appropriate to its analysis herein.

## C. ANALYSIS

As discussed above, the Plaintiff raises both civil rights claims under 42 U.S.C. § 1983 and conspiracy claims under 42 U.S.C. § 1985. The Court finds that the Defendants are entitled to summary judgment on all these claims.

### 1. The civil rights claims

The Plaintiff raises two claims under 42 U.S.C. § 1983. She alleges that Morgan, Whala, Brown and Berry (all corrections officers at OSP) failed to take reasonable steps to insure the safety of her brother Herron on the day he was murdered. Specifically, the Plaintiff claims that Morgan, Whala, Brown and Berry: (i) failed to properly search Herron's fellow inmates before releasing them into the prison yard with him; (ii) consciously created a racial imbalance in the prison yard inimical to Herron's safety; and, (iii) failed to respond promptly to the attack on Herron when they discovered it. The Plaintiff also alleges that Boone and Mullin failed to adequately train, supervise, and discipline corrections officers (including Morgan, Whala, Brown and Berry) to take reasonable steps to insure prisoner safety. For the reasons set forth below, the Court finds that the Defendants are entitled to summary judgment on both these claims.

It is constitutionally well-established that prison officials must take reasonable steps

to ensure the safety of inmates. *See, e. g., Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) ("Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."), *citing Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994) ("The [Eighth] Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'"), *quoting Hudson v. Palmer,* 468 U.S. 517, 526-527 (1984). This does not, however, mean that the safety of prison inmates is or can be absolutely guaranteed. *See Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999) ("We recognize at the outset that neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners."), *citing Berry v. City of Muskogee,* 900 F.2d 1489, 1499 (10th Cir.1990). In order to establish a claim under the Eighth Amendment for failure to protect, Plaintiff must show: (1) that he was incarcerated under conditions posing a substantial risk of serious harm; and, (2) that prison officials acted with deliberate indifference to his safety. *Farmer*, 511 U.S. at 834 ("For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm . . . The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.' In prison-conditions cases that state of mind is

one of 'deliberate indifference' to inmate health or safety.") [internal citations omitted], *quoting Wilson v. Seiter,* 501 U.S. 294, 297 (1991).

The Plaintiff claims that Morgan, Whala, Brown and Berry had prior knowledge of the danger of an attack on Mr. Herron because of his involvement in an altercation the day before, but that they were deliberately indifferent to such danger, *i. e.*, they failed to properly search other inmates for weapons, they consciously created a racial imbalance on the prison yard and they responded too slowly when the attack began. However, the Plaintiff has no proof of these claims, and the undisputed fact of this case are flatly to the contrary. First, none of the Defendants had notice of a previous altercation involving Herron. *See* Statement of Uncontroverted Facts, ¶ 28. Second, Whala was the only defendant involved in searching the inmates and releasing them into the prison yard on the day Herron was stabbed. *See* Statement of Uncontroverted Facts, ¶¶ 16-19, 24-29. Third, Whala and another corrections officer conducted an exhaustive search of the inmates according to OSP policy before releasing them into the prison yard.[2] No knives or other weapons were found. *See* Statement of Uncontroverted Facts, ¶¶ 8-11, 20-29, 39.[3] Fourth, there is no evidence that any racial

---

[2] According to prison policy, before leaving the cell, each inmate is required to strip to his underwear and pass his clothes to an officer. The inmate then passes his underwear to an officer to be searched. The inmate is then required to squat and cough, bend at the waist and spread his buttocks, lift his scrotum, and open his mouth. The inmate's underwear is returned before he exits the cell. The inmate is scanned with a soni frisker while he is in his underwear, and then is taken to a common area to finish dressing. Finally, each inmate is frisked by an officer before entering the exercise yard. *See* Statement of Uncontroverted Facts, ¶ 11.

[3] The Plaintiff argues that Morgan, Whala, Brown and Berry demonstrated deliberate indifference to Herron's safely by inadequately searching the prison yard for weapons before searching the inmates and sending them outside. This argument is misplaced for two reasons. First, it is at odds with the allegations contained in the Plaintiff's pleadings, *see, e. g.,* Complaint [Docket

imbalance in the prison yard was created by this process, consciously or otherwise. *See* Statement of Uncontroverted Facts, ¶¶ 24-25, 27, 29. Finally, the Defendants responded promptly upon discovering the attack on Herron. Brown was working the control room and radioed the others when a fight broke out. *See* Statement of Uncontroverted Facts, ¶¶ 17, 31. Whala, Morgan and two other corrections officers headed immediately to the scene, and were joined on the way by Berry. *See* Statement of Uncontroverted Facts, ¶¶ 32, 34. Two of these officers were delayed by an equipment malfunction, *see* Statement of Uncontroverted Facts, ¶ 33, but the other three reached the yard where Herron was stabbed within eighty-three seconds of the attack. *See* Statement of Uncontroverted Facts, ¶¶ 34-36. The attack ended less than thirty seconds later, and medical help was promptly summoned for Herron. *See* Statement of Uncontroverted Facts, ¶¶ 36-37.

The Plaintiff also claims that Boone and Mullin inadequately trained and supervised corrections officers in the protection of inmates. A supervisor may not be held liable for violation of an inmate's constitutional rights unless he personally participated therein, *see, e. g., Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996) ("[I]n order to successfully assert a § 1983 claim under the Eighth Amendment for failure to protect, a plaintiff must show personal involvement or participation in the incident. Supervisor status alone is

---

No. 1], ¶ 10 ("This procedure was not followed on December 11, 2002, otherwise, *the inmates in possession of the six-inch knives would not have been permitted to enter the exercise area*.") [emphasis added], and with the theory underlying the Plaintiff's claims herein, *i. e.*, that the inmates were inadequately searched before being released into the yard. Second, the idea that the weapons used to attack Herron might have been retrieved from hiding places in the yard is at odds with the undisputed evidence, *i. e.*, the weapons used to attack Herron were apparently secreted in body cavities and carried outside by the assailants. *See* Statement of Uncontroverted Facts, ¶ 45.

insufficient to support liability.") [internal quotations and citations omitted], *i. e.*, there must be a direct causal link between the supervisor's alleged failure to train or supervise and the plaintiff's alleged constitutional injury. *Lopez,* 172 F.3d at 760. As discussed above, there is no evidence in this case of a violation of Herron's constitutional rights. But even if there was, there is no evidence that Morgan, Whala, Brown and Berry were inadequately trained. *See* Statement of Uncontroverted Facts, ¶¶ 12, 14. On the contrary, the undisputed evidence is that those officers were adequately trained, knew the proper procedures and followed them. Futher, there is no evidence of any kind as to the supervisory practices of Mullin or Boone. *See* Statement of Uncontroverted Facts, ¶ 14.

The Plaintiff has presented nothing other than unsubstantiated allegations in support of her claim that the Defendants herein were deliberately indifferent to Herron's safety. On the contrary, the undisputed evidence submitted by the Defendants in support of summary judgment indicates that corrections officers at OSP were adequately trained and supervised, that they followed proper procedures in searching the inmates who attacked Herron and that they responded appropriately when they discovered the attack. The Defendants are therefore entitled to summary judgment on the Plaintiff's claims under 42 U.S.C. § 1983.

### 2. The conspiracy claims

The Plaintiff raises three claims under 42 U.S.C. § 1985(3). She alleges that Morgan, Whala, Brown and Berry conspired to deprive Herron of his civil rights by failing to take reasonable steps to insure his safety, that Boone and Mullin conspired to deprive Herron of

his civil rights by failing to adequately train, supervise, and discipline corrections officers to take reasonable steps to insure prisoner safety and that Mullin, Boone and the Defendant Scott D. Crow conspired to deprive Herron of his civil rights by impeding the investigation into his death. In order to establish such claims, the Plaintiff must show as to each: (i) a conspiracy motivated by racially discriminatory animus; (ii) to deprive Herron of equal protection of the laws; (iii) an act in furtherance of the conspiracy; and, (iv) a deprivation of rights resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

As discussed above, there is no evidence that Herron was deprived of his Eighth Amendment right to reasonable safety measures by any of the Defendants herein. Thus, any 42 U.S.C. § 1985(3) conspiracy claims based on an alleged Eighth Amendment violations by Defendants must likewise fail. *See Holmes v. Finney,* 631 F.2d 150, 154 (10th Cir. 1980) ("[W]e feel that the Court has indicated that a violation of an independently created right is required. Section 1985(3)". . . by contrast, creates no rights. It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right-to equal protection of the laws or equal privileges and immunities under the laws-is breached by a conspiracy in the manner defined by the section."), *quoting Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 376 (1979). *See also Murray v. City of Sapulpa,* 45 F.3d 1417, 1423 (10th Cir. 1995) ("Thus, Messrs. Murray and Weaver cannot show that the alleged conspiracy injured or deprived them of a right."); *Dixon v. City of Lawton,* 898 F.2d 1443, 1449 n. 6 (10th Cir. 1990) ("*Provided that there is an underlying constitutional deprivation,* the conspiracy claim allows for imputed liability; a plaintiff may

be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy") [emphasis added]. This disposes of the Plaintiff's conspiracy claim against Morgan, Whala, Brown and Berry, and her conspiracy claim against Boone and Mullin for failing to train and supervise those officers.

Furthermore, the Plaintiff admits she has no direct evidence of a conspiracy among Boone, Mullin and Crow to interfere with the investigation of the attack on Herron.[4] *See* Statement of Uncontroverted Facts, ¶ 44. On the other hand, the undisputed evidence submitted by the Defendants in support of summary judgment indicates there was no such conspiracy. Immediately after the incident, the inmates were searched again, evidence was collected and the prison yard was secured as a crime scene. *See* Statement of Uncontroverted Facts, ¶¶ 37-38. An investigator arrived on the scene the same day, and he eventually interviewed every inmate who was in the prison yard that day. *See* Statement of Uncontroverted Facts, ¶¶ 42, 45. There was some delay in the completion of the investigation, but it was occasioned not by anything the Defendants did but instead by a backlog of blood-work at the OSBI lab. *See* Statement of Uncontroverted Facts, ¶¶ 46-47. Thus, assuming *arguendo* that the Plaintiff could show a constitution violation resulting from an impeded investigation, *see, e. g., Jennings v. City of Stillwater,* 383 F.3d 1199, 1207 (10th Cir. 2004) (discussing a botched investigation as a potential denial of access to courts claim

---

[4] Indeed, the Plaintiff admits having no direct evidence of any of the conspiracies she alleges. *See* Statement of Uncontroverted Facts, ¶¶ 14-15, 40, 44. Nor does she have evidence of racial animus harbored by any of these Defendants. *See* Statement of Uncontroverted Facts, ¶ 40. In this regard, it is worth noting that the Plaintiff has presented no evidence whatever as to Herron's race, the race of his assailants or the race of any of the Defendants.

under *Christopher v. Harbury,* 536 U.S. 403 (2002)); *Wilson v. Meeks,* 52 F.3d 1547, 1556-58 (10th Cir. 1995) (discussing a police coverup as a potential denial of access to courts claim before *Harbury*), there is simply no evidence that Boone, Mullin and Crow conspired to commit such a violation.

### D.  CONCLUSION

The Plaintiff has presented no evidence showing a genuine issue of material fact as to her Eighth Amendment claims under 42 U.S.C. § 1983 or her conspiracy claims under 42 U.S.C. § 1985(3), and the Defendants are therefore entitled to summary judgment pursuant to Fed. R. Civ. P. 56.  Accordingly, IT IS ORDERED that the Defendants' Motion for Summary Judgment and Brief in Support [Docket No. 69] is hereby GRANTED.

**IT IS SO ORDERED** this 13th day of July, 2006.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**